UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No: 2:16-551 |
| v. | ) | |
| | ) | **INDICTMENT** |
| AEGEAN SHIPPING MANAGEMENT, S.A., AEGEANSUN GAMMA, INC., PANAGIOTIS KOUTOUKAKIS, HERBERT JULIAN, and NIKOLAOS BOUNOVAS, | ) ) ) ) ) ) | Count 1: Aiding and Abetting Violation of the Act to Prevent Pollution from Ships (33 U.S.C. § 1908(a); 18 U.S.C. § 2; 33 C.F.R. § 151.25; MARPOL Protocol, Annex I, Regulation 17) |
| Defendants. | ) ) ) | Count 2: Falsification of Records (18 U.S.C. § 1519 and 2) |
| | ) ) ) | Counts 3, 4, and 5: Obstruction of an Agency Proceeding (18 U.S.C. § 1505) |
| | ) | Count 6: Conspiracy (18 U.S.C. § 371) |

THE GRAND JURY CHARGES:

At all times relevant to this Indictment:

    A.    <u>The Defendants</u>

    1.    Defendant AEGEAN SHIPPING MANAGEMENT, S.A., was a business entity formed under the laws of the Republic of Liberia. The company had operations and personnel in Greece. AEGEAN SHIPPING MANAGEMENT was the operator of the vessel at issue in this case, *Tanker Vessel (T/V) Green Sky.* AEGEAN SHIPPING MANAGEMENT is criminally liable through the acts and omissions of its agents and employees.

    2.    Defendant AEGEANSUN GAMMA, INC., was a business entity incorporated in the Republic of the Marshall Islands. AEGEANSUN GAMMA was the owner of the *T/V Green*

1

*Sky*. AEGEANSUN GAMMA is criminally liable through the acts and omissions of its agents and employees.

3. Defendant PANAGIOTIS KOUTOUKAKIS, a citizen of Greece, served as the Chief Engineer on the *T/V Green Sky* from on or about February 1, 2015, until on or about August 3, 2015.

4. Defendant HERBERT JULIAN, a citizen of the Philippines, served as the Chief Engineer on the *T/V Green Sky* from on or about August 3, 2015, until on or about September 4, 2015.

5. Defendant NIKOLAOS BOUNOVAS, a citizen of Greece, served as the Second Assistant Engineer, also known as the Second Engineer, on the *T/V Green Sky* from on or about July 13, 2015, until on or about September 4, 2015.

B. The *T/V Green Sky*

6. The *T/V Green Sky*, also known as the *M/T Green Sky*, was a 30,263 gross ton, ocean-going vessel that operated as a petroleum and chemical tanker. The *T/V Green Sky* was approximately 600 feet in length, was registered in Liberia, and had an International Maritime Organization (IMO) number of 9676515.

7. In addition to the Captain or "Master," the vessel had an Engine Department headed by a Chief Engineer, who was assisted by a Second Assistant Engineer, a Third Assistant Engineer, a Fourth Assistant Engineer, two Oilers, and an Electrician. The Chief Engineer had overall responsibility for the operation of the Engine Department and the formulation and implementation of Engine Department procedures. These procedures included tracking the generation, transfer, and disposal of sludge, oil residue, oily mixtures, and machinery space bilge water from the vessel, as well as making entries into the vessel's Oil Record Book. In addition to

2

the engineer that completes a recorded operation, the Master of the vessel was required to sign the Oil Record Book. As used in this Indictment, "Oil Record Book" refers to the set of volumes, comprising separate physical books, that were onboard the *T/V Green Sky* on or about August 25, 2015, through on or about September 1, 2015.

8. The operation of vessels like the *T/V Green Sky* generates large quantities of oily wastes, including: sludge, oil residue, oily mixtures, and machinery space bilge water. Machinery space bilge water is created when water mixes in the bottom of the vessel, known as the "bilges," with oil that has leaked and dripped from the machinery and the lubrication and fuel systems for the engines. These "oily mixtures" are often referred to as "bilge waste," "bilge slops," and "slops from bilges," and are collected, stored, and processed to separate the water from the oil and other wastes using a pollution prevention control device known as an Oil Water Separator and an oil-sensing device known as an Oil Content Monitor (or Oil Content Meter). Machinery space bilge water may be discharged overboard only after passing through an Oil Water Separator to ensure that it contains fifteen parts per million ("ppm") or less of oil, as measured by the Oil Content Monitor. If the Oil Content Monitor detects an oil content of greater than 15 ppm in the effluent, it activates an alarm and shuts down the pumps or diverts the flow in order to prevent the discharge of greater than 15 ppm of oil overboard.

    C.    <u>Legal Framework</u>

9. The United States is party to a multinational treaty that regulates the discharge of oil from vessels at sea: the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (together MARPOL). Liberia is also a party to MARPOL. MARPOL is embodied in agreements that the United States has ratified and has been implemented in the United States by the Act to Prevent Pollution from Ships (APPS), 33 U.S.C.

3

§§ 1901 *et seq.* APPS makes it a crime for any person to knowingly violate MARPOL, APPS, or regulations promulgated under APPS. 33 U.S.C. § 1908. These regulations apply to commercial vessels operating in the navigable waters of the United States or while in a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States. 33 U.S.C. § 1902(a)(1)-(3).

10. MARPOL Annex I (Regulations for the Prevention of Pollution by Oil) established international standards governing the treatment and disposal of oily mixtures generated from the machinery spaces of a vessel. Under MARPOL, machinery space bilge water may be discharged overboard into the ocean only if it does not exceed 15 ppm of oil and the ship has in operation required pollution prevention equipment. This equipment includes: an oil filter, known as an Oil Water Separator; an alarm connected to an Oil Content Monitor; and an automatic stopping device, known as a Three-Way Valve. This equipment prevents the discharge of machinery space waste containing more than 15 ppm oil, the maximum legally permitted concentration of oil in the dischargeable mixture.

11. Consistent with the requirements contained in MARPOL, APPS regulations require that vessels such as the *T/V Green Sky* maintain a document known as an Oil Record Book in which the disposal, transfer, and discharge overboard of sludge, oil residue, oily mixtures, and machinery space bilge water must be recorded. 33 C.F.R. § 151.25(d). Discharges from the machinery spaces must be fully and accurately recorded in the Oil Record Book without delay by the person in charge of the operations. 33 C.F.R. § 151.25(d) and (h). The Oil Record Book also must record any emergency, accidental, or other exceptional discharges of oil or mixtures, including a statement of the circumstances and reasons for the discharge. 33 C.F.R. § 151.25(g). A bypass of the Oil Water Separator, which is not recorded in the Oil Record Book,

4

jeopardizes the accuracy and integrity of that document. To ensure the integrity of the document, it is signed by the person or persons in charge of oily bilge water discharges and the Master of the vessel. 33 C.F.R. § 151.25(h). The Oil Record Book must be maintained aboard the vessel for not less than three years, and be readily available for inspection at all reasonable times. 33 C.F.R. § 151.25(k); MARPOL, Annex I, Regulation 17(6).

12. The United States Coast Guard, an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under 14 U.S.C. § 89(a) to board vessels and conduct inspections and investigations of potential violations and to determine compliance with MARPOL, APPS, and related regulations. In conducting inspections, United States Coast Guard personnel rely on the statements of the vessel's crew and documents, including information contained in Oil Record Books. The United States Coast Guard is specifically authorized to examine a vessel and its Oil Record Books for compliance with MARPOL and APPS. 33 U.S.C. § 1907(c); 33 C.F.R. § 151.23(a)(3) and (c); and MARPOL Protocol, Annex I, Regulation 11(1). The United States Coast Guard's MARPOL examination of a vessel is an agency proceeding pursuant to 18 U.S.C. § 1505.

D. Charged Counts

### COUNT ONE
*(Knowing Failure to Maintain Accurate Oil Record Book -*
*Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a);*
*Aiding and Abetting, 18 U.S.C. § 2)*

13. Paragraphs 1 through 12 *supra* are incorporated into Count One as if they were re-alleged herein in their entirety.

14. On or about August 25, 2015, through on or about September 1, 2015, in the Port of North Charleston, South Carolina, and within the internal waters of the United States and in

the District of South Carolina, and elsewhere, defendants PANAGIOTIS KOUTOUKAKIS, HERBERT JULIAN, NIKOLAOS BOUNOVAS, AEGEAN SHIPPING MANAGEMENT, S.A., and AEGEANSUN GAMMA, INC., did knowingly fail to accurately maintain, caused the failure to accurately maintain, and aided and abetted the failure to accurately maintain, the Oil Record Book for the *T/V Green Sky*.

All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2; Title 33, Code of Federal Regulations, Section 151.25(a), (d), (g) (h), and (j); Regulation 17 of the MARPOL Protocol, Annex I.

## COUNT TWO
*(Falsification of Records, 18 U.S.C. § 1519;*
*Aiding and Abetting, 18 U.S.C. § 2)*

15. Paragraphs 1 through 12 *supra* are incorporated into Count Two as if they were re-alleged herein in their entirety

16. On or about February 1, 2015, through on or about August 26, 2015, in the Port of ~~North~~ Charleston, South Carolina, and within the District of South Carolina, and elsewhere, defendants PANAGIOTIS KOUTOUKAKIS, HERBERT JULIAN, NIKOLAOS BOUNOVAS, AEGEAN SHIPPING MANAGEMENT, S.A., and AEGEANSUN GAMMA, INC., did knowingly conceal, cover up, and falsify, and make false entries, and did knowingly aid and abet the concealment, cover up, falsification, and making of false entries, in a record and document, that is, a false, fictitious, and misleading Oil Record Book for the *T/V Green Sky* that concealed the disposal and discharge of oily mixtures and machinery space bilge water, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States

Coast Guard and the Department of Homeland Security, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with MARPOL and United States law.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THREE
*(Obstruction of an Agency Proceeding - 18 U.S.C. § 1505)*

17.     Paragraphs 1 through 12 *supra* are incorporated into Count Three as if they were re-alleged herein in their entirety

18.     On or about August 26, 2015, through on or about August 28, 2015, in the Port of North Charleston, South Carolina, and within the District of South Carolina, the defendants HERBERT JULIAN, AEGEAN SHIPPING MANAGEMENT, S.A., and AEGEANSUN GAMMA, INC., did corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the United States Coast Guard and the Department of Homeland Security, to wit: a vessel examination of the *T/V Green Sky* to determine that vessel's compliance with MARPOL, APPS, and United States law, by falsely and misleadingly stating to the United States Coast Guard that the *T/V Green Sky* did not keep a sounding log.

All in violation of Title 18, United States Code, Section 1505.

## COUNT FOUR
*(Obstruction of an Agency Proceeding - 18 U.S.C. § 1505)*

19.     Paragraphs 1 through 12 *supra* are incorporated into Count Four as if they were re-alleged herein in their entirety.

20.     On or about August 26, 2015, through on or about August 28, 2015, in the

Port of ~~North~~ Charleston, South Carolina, within the District of South Carolina, the defendant AEGEAN SHIPPING MANAGEMENT, S.A., through the actions of its Marine Manager, did corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the United States Coast Guard and the Department of Homeland Security, to wit: a vessel examination of the *T/V Green Sky* to determine that vessel's compliance with MARPOL, APPS, and United States law, by instructing the Master of the vessel not to provide inculpatory information to the United States Coast Guard.

All in violation of Title 18, United States Code, Section 1505.

## COUNT FIVE
*(Obstruction of an Agency Proceeding - 18 U.S.C. § 1505)*

21. Paragraphs 1 through 12 *supra* are incorporated into Count Five as if they were re-alleged herein in their entirety.

22. On or about August 26, 2015, through on or about August 28, 2015, in the Port of ~~North~~ Charleston, South Carolina, and within the District of South Carolina, the defendants, AEGEAN SHIPPING MANAGEMENT, S.A. and AEGEANSUN GAMMA, INC., through the actions and omissions of then Master, Genaro Anciano, did corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the United States Coast Guard and the Department of Homeland Security, to wit: a vessel examination of the *T/V Green Sky* to determine that vessel's compliance with MARPOL, APPS, and United States law, by falsely and misleadingly stating, orally and in writing, to United States Coast Guard personnel that:

8

(a) Prior to August 26, 2015, there was no knowledge of any bypass of the Oil Water Separator or "improper connection of piping in the Engine Room and alleged overboard discharge…;"

(b) The Oilers' resignation letters did not contain anything about an overboard discharge of oil;

(c) The Oiler's resignation letters contained "no specific reason given in [for] the resignation…;"

(d) Prior to August 28, 2015, the Master had not seen the resignation letter from one of the Oilers, which identified being ordered by the engineers to pump out bilge, mentioned the use of a "'magic'[] [d]evice" that was being used to pump bilge overboard, and revealed the Chief Engineer's knowledge of the bypass [magic] device as one of the reasons for the Oiler's resignation; and

(e) Prior to August 28, 2015, the Chief Engineer HERBERT JULIAN never mentioned anything to the Master regarding overboard discharges;

All in violation of Title 18, United States Code, Section 1505.

## COUNT SIX
*(Conspiracy - 18 U.S.C. § 371)*

23.  Paragraphs 1 through 12 *supra* are incorporated into Count Six as if they were re-alleged herein in their entirety.

### OBJECTS OF THE CONSPIRACY

24.  Between a time unknown, but including on or about May 18, 2015, through on or about September 4, 2015, in the District of South Carolina and elsewhere, defendants PANAGIOTIS KOUTOUKAKIS, HERBERT JULIAN, NIKOLAOS BOUNOVAS, AEGEAN

SHIPPING MANAGEMENT, S.A., and AEGEANSUN GAMMA, INC., did combine, confederate, conspire, and agree together with others known and unknown to the Grand Jury, in violation of 18 U.S.C. § 371, to:

(a) OBJECT 1: Defraud the United States by impairing and impeding the governmental functions of the United States Coast Guard, a component of the Department of Homeland Security, in its inspection and examination of the *T/V Green Sky* for violations of and compliance with MARPOL and the Act to Prevent Pollution from Ships.

(b) OBJECT 2: To knowingly alter, conceal, cover up, falsify, and make a false entry in any record and document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the U.S. Coast Guard and Department of Homeland Security and in relation to and in contemplation of a matter, namely, the U.S. Coast Guard's inspections to determine the *T/V Green Sky*'s compliance with MARPOL and the Act to Prevent Pollution from Ships, in violation of Title 18, United States Code, Section 1519.

## MANNER AND MEANS OF THE CONSPIRACY

25. The following manner and means were used, among others, by the defendants and co-conspirators to effectuate the conspiracy:

26. It was part of the conspiracy that the defendants and unindicted co-conspirators knowingly discharged and caused the overboard discharge of oily mixtures and bilge water that accumulated in machinery spaces on the *T/V Green Sky* directly into the ocean without the use of the Oily Water Separator.

27. It was further part of the conspiracy that the defendants and unindicted co-conspirators knowingly concealed, covered up, falsified, and made false entries, and caused the foregoing, in the Oil Record Book. The falsehoods and omissions in the Oil Record Book

covered up, *inter alia*, the fact that the Oil Water Separator had been bypassed. With regard to the Oil Record Book, members of the conspiracy (a) failed to accurately record the quantities of oily mixtures and machinery space bilge water stored within the *T/V Green Sky*; (b) failed to record the overboard discharges of oily mixtures and machinery space bilge water that occurred without the use of an Oil Water Separator; (c) falsely represented that discharges of machinery space bilge waters had occurred with the use of the Oil Water Separator; and (d) falsely represented that engineering staff had completed certain operations related to machinery space bilge water.

28.     It was further part of the conspiracy that members of the conspiracy concealed a record of tank soundings, also known as a sounding log, prior to and during multiple port calls.

29.     It was further part of the conspiracy that members of the conspiracy obstructed justice by encouraging silence and making false statements to the United States Coast Guard in order to cover up the bypass of the Oil Water Separator and the falsity of the Oil Record Book.

## OVERT ACTS - OIL WATER SEPARATOR BYPASS

30.     OVERT ACT 1: On or about May 18, 2015, co-conspirator members of the Engine Room staff instructed newly arrived members of the Engine Room how to bypass the Oil Water Separator.

31.     OVERT ACT 2: On or about May 19, 2015, Defendant KOUTOUKAKIS ordered a co-conspirator member of the Engine Room staff to bypass the Oil Water Separator utilizing a valve configuration that involved the General Services/Fire Pump onboard the *T/V Green Sky*.

32.     OVERT ACT 3: On or about May 24, 2015, Defendant KOUTOUKAKIS ordered a co-conspirator member of the Engine Room staff to bypass the Oil Water Separator utilizing a valve configuration that involved the General Services/Fire Pump onboard the *T/V Green Sky*.

33. OVERT ACT 4: On or about June 3, 2015, Defendant KOUTOUKAKIS ordered a co-conspirator member of the Engine Room staff to bypass the Oil Water Separator utilizing a valve configuration that involved the General Services/Fire Pump onboard the *T/V Green Sky*.

34. OVERT ACT 5: On or about June 12, 2015, Defendant KOUTOUKAKIS ordered a co-conspirator member of the Engine Room staff to bypass the Oil Water Separator utilizing a valve configuration that involved the General Services/Fire Pump onboard the *T/V Green Sky*.

35. OVERT ACT 6: On or about July 16, 2015, Defendant KOUTOUKAKIS ordered a co-conspirator member of the Engine Room staff to bypass the Oil Water Separator utilizing a portable pump.

36. OVERT ACT 7: On or about July 27, 2015, Defendant KOUTOUKAKIS ordered a co-conspirator member of the Engine Room staff to bypass the Oil Water Separator utilizing a valve configuration that involved the General Services/Fire Pump onboard the *T/V Green Sky*.

37. OVERT ACT 8: On or about August 6, 2015, Defendant JULIAN ordered a co-conspirator member of the Engine Room staff to bypass the Oil Water Separator utilizing a flexible yellow hose.

38. OVERT ACT 9: On or about August 16, 2015, Defendant JULIAN ordered a co-conspirator member of the Engine Room staff to bypass the Oil Water Separator utilizing a valve configuration that involved the General Services/Fire Pump onboard the *T/V Green Sky*.

39. OVERT ACT 10: On or about August 19, 2015, Defendant JULIAN ordered a co-conspirator member of the Engine Room staff to bypass the Oil Water Separator utilizing a flexible yellow hose.

## OVERT ACTS - ENTRIES IN THE OIL RECORD BOOK

40. OVERT ACT 11: On or about May 24, 2015, Defendant KOUTOUKAKIS falsely recorded the bilge water holding tank as holding 5.4 cubic meters of bilge water.

41. OVERT ACT 12: On or about May 31, 2015, Defendant KOUTOUKAKIS falsely recorded the bilge water holding tank as holding 5.4 cubic meters of bilge water.

42. OVERT ACT 13: On or about June 7, 2015, Defendant KOUTOUKAKIS falsely recorded the bilge water holding tank as holding 8.8 cubic meters of bilge water.

43. OVERT ACT 14: On or about June 14, 2015, Defendant KOUTOUKAKIS falsely recorded the bilge water holding tank as holding 8.8 cubic meters of bilge water.

44. OVERT ACT 15: On or about June 21, 2015, Defendant KOUTOUKAKIS falsely recorded the bilge water holding tank as holding 3.1 cubic meters of bilge water.

45. OVERT ACT 16: On or about July 5, 2015, Defendant KOUTOUKAKIS falsely recorded the bilge water holding tank as holding 9.5 cubic meters of bilge water.

46. OVERT ACT 17: On or about July 12, 2015, Defendant KOUTOUKAKIS falsely recorded the bilge water holding tank as holding 9.5 cubic meters of bilge water.

47. OVERT ACT 18: On or about July 15, 2015, Defendant BOUNOVAS signed adjacent to an entry that falsely represented that he pumped 8.2 cubic meters of bilge water overboard utilizing the Oil Water Separator.

48. OVERT ACT 19: On or about July 22, 2015, Defendant KOUTOUKAKIS falsely recorded the bilge water holding tank as holding 4.5 cubic meters of bilge water.

49. OVERT ACT 20: On or about July 26, 2015, Defendant KOUTOUKAKIS falsely recorded the bilge water holding tank as holding 4.5 cubic meters of bilge water.

50. OVERT ACT 21: On or about August 1, 2015, Defendant KOUTOUKAKIS falsely recorded the bilge water holding tank as holding 8.6 cubic meters of bilge water.

51. OVERT ACT 22: On or about August 2, 2015, Defendant KOUTOUKAKIS falsely recorded the bilge water holding tank as holding 8.6 cubic meters of bilge water.

52. OVERT ACT 23: On or about August 3, 2015, to on or about August 25, 2015, Defendant JULIAN ordered one of the engineers to sign the Oil Record Book adjacent to entries relating to bilge water. These bilge water entries were for operations that the engineer did not undertake.

53. OVERT ACT 24: On or about August 7, 2015, Defendant BOUNOVAS signed adjacent to an entry that falsely represented that 8.61 cubic meters of bilge water were pumped overboard utilizing the Oil Water Separator.

54. OVERT ACT 25: On or about August 13, 2015, Defendant BOUNOVAS signed adjacent to an entry that falsely represented that 18.55 cubic meters of bilge water were pumped overboard utilizing the Oil Water Separator.

55. OVERT ACT 26: On or about August 16, 2015, Defendant BOUNOVAS signed adjacent to an entry that falsely represented that 14.15 cubic meters of bilge water were pumped overboard utilizing the Oil Water Separator.

56. OVERT ACT 27: On or about August 19, 2015, Defendant BOUNOVAS signed adjacent to an entry that falsely represented that 24.34 cubic meters of bilge water were pumped overboard utilizing the Oil Water Separator.

57. OVERT ACT 28: On or about August 23, 2015, Defendant BOUNOVAS signed adjacent to an entry that falsely represented that 14.9 cubic meters of bilge water were pumped overboard utilizing the Oil Water Separator.

OVERT ACTS - OBSTRUCTIVE CONDUCT IN NORTH CHARLESTON, SC

58. OVERT ACT 29: On or about August 26, 2015, after being asked by the United States Coast Guard if the vessel had a sounding log, Defendant JULIAN responded that the vessel did not keep a sounding log. Shortly thereafter, once the United States Coast Guard received information that the *T/V Green Sky* actually had a sounding log and Coast Guard personnel retrieved the sounding log from the Engine Control Room, Defendant JULIAN made a motion to grab the sounding log.

59. OVERT ACT 30: On or about August 26, 2015, while onboard the vessel, during the United States Coast Guard MARPOL examination, after having been shown the Oiler's resignation letter referring to bypassing the Oil Water Separator, and having been told that the Chief Engineer had reportedly admitted to bypassing the Oil Water Separator on one occasion, Defendant AEGEAN SHIPPING MANAGEMENT, through its Marine Manager, instructed the Master of the *T/V Green Sky*, "The company doesn't know anything, I don't know anything, and you don't know anything. Don't say anything about it." The Marine Manager's directive

15

followed the Captain's comment that it appeared that a MARPOL report had already been made to the Coast Guard.

All in violation of Title 18, United States Code, Section 371.

A **True** BILL

_____
BETH DRAKE
ACTING UNITED STATES ATTORNEY

JOHN C. CRUDEN
Assistant Attorney General for the
Environment and Natural Resources Division

_____
By: CHRISTOPHER L. HALE
Trial Attorney, Environmental Crimes Section